IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APRIL MICHELLE FETTERS,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>KILOLO KIJAKAZI,<br>*Acting Commissioner of Social Security*,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　Civil Action No. 21-1861<br>)<br>)<br>)<br>)<br>)<br>) |

<u>ORDER</u>

AND NOW, this 9th day of January 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on May 16, 2022,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on March 25, 2022,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is granted insofar as she seeks remand for further administrative proceedings and denied in all other respects. Accordingly, this matter is hereby remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**I.　Background**

Plaintiff protectively filed an application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. § 401, *et seq.*, on February 9, 2020 and therein alleged disability onset of June 21, 2019. (R. 15). Her claim was denied initially and then denied by an Administrative Law Judge ("ALJ") on April 30, 2021. (R. 15, 27). She then sought review before the Appeals Council and, when it denied her request for

review (R. 1), the ALJ's decision became the agency's final decision. 20 C.F.R. § 404.981. Plaintiff has now challenged the ALJ's decision before the Court.

## II.    Standard of Review

The Court reviews the ALJ's decision for "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court's review of legal questions is plenary. *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011). ALJs assess disability pursuant to a "five-step sequential evaluation." 20 C.F.R. § 404.1520(a)(1); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). Pursuant thereto, an ALJ considers "whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work." *Roberts v. Astrue*, No. 02:08-CV-0625, 2009 WL 3183084, at *2 (W.D. Pa. Sept. 30, 2009); 20 C.F.R. § 404.1520(a)(4)(i)—(v). If a claimant cannot return to past work or adjust to other work, then the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## III.   The ALJ's Decision

In this matter, the ALJ found at step one of the five-step evaluation that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (R. 18). At step two, the ALJ found that Plaintiff had six severe, medically determinable impairments: (1) anxiety, (2) depression, (3) post-traumatic stress disorder, (4) attention deficit disorder, (5) migraine headaches, and (6) mild intellectual disorder. (*Id.*). Next, the ALJ considered whether Plaintiff met or equaled the criteria for any of the presumptively disabling impairments that are

listed in the regulations in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). The ALJ considered listed neurological disorders first but found that Plaintiff did not meet or equal criteria for them. (R. 18—19). Next, the ALJ considered whether Plaintiff met or equaled criteria for a listed mental impairment, including Listing 12.05 for intellectual disorder, but found that Plaintiff had not produced evidence showing "that the severity of intellectual disorder satisfies 12.05 A or 12.05 B." (R. 19—20).[1]

Having thus found, at step three, that Plaintiff did not meet or equal the criteria for a presumptively disabling impairment, the ALJ continued to the fourth and fifth steps of her evaluation of Plaintiff's alleged disability. Before evaluating Plaintiff's ability to return to past relevant work or adjust to other work, the ALJ first assessed Plaintiff's residual functional capacity ("RFC"). Considering Plaintiff's alleged symptoms and limitations, her objective medical records, and medical opinion evidence/prior administrative medical findings, the ALJ

---

[1] For Listing 12.05, the ALJ first considered the Paragraph A criteria, *i.e.*, the presence of "[s]ignificantly subaverage general intellectual functioning" that impaired the ability to "participate in standardized testing of intellectual functioning;" "[s]ignificant deficits in adaptive functioning currently manifested by the claimant's dependence upon others for personal needs;" and "evidence . . . demonstrat[ing] or support[ing] the conclusion that the [claimant's] disorder began prior to [his/her] attainment of age 22." (R. 19—20). The ALJ also considered the alternative Paragraph B criteria, *i.e.*, whether evidence showed "[s]ignificantly subaverage general intellectual functioning" shown by "full scale . . . I.Q. score of 70 or below" or "full scale . . . IQ score of 71-75 accompanied by a verbal or performance I.Q. score . . . of 70 or below;" and "[s]ignificant deficits in *adaptive functioning* currently manifested by an extreme limitation of one, or marked limitation of two," areas of mental functioning (*id.*). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B (further explaining that the evidence must show disorder onset before attainment of age twenty-two). For areas of mental functioning, the ALJ considered whether Plaintiff's impairments "result[ed] in an extreme limitation of one or marked limitation of two of the following areas of mental functioning: 1) *understanding, remembering*[,] *or applying information*; 2) *interacting with others*; 3) *concentrating, persisting, or maintaining pace*, and 4) *adapting or managing oneself*." (R. 19). In her evaluation of the degree of Plaintiff's limitations in those functional areas, the ALJ determined that Plaintiff had mild limitation in understanding, remembering, or applying information and moderate limitations in the other three areas. (R. 23).

3

found Plaintiff could perform medium work with additional limitations, such as limitation to only "simple, routine tasks and simple work-related decisions," "occasional interaction with supervisors and coworkers" without "tandem tasks," no "contact with the public," and "few changes to work process and setting." (*Id.*). This RFC would not permit a return to Plaintiff's past work (R. 26), but it and Plaintiff's other relevant characteristics were found to permit adjustment to work as a "Laboratory Equipment Cleaner," "Industrial Cleaner," and "Agricultural Produce Packer." (R. 27). In total, these occupations offered more than 50,000 jobs in the national economy. (*Id.*). Thus, the ALJ found Plaintiff to be not disabled. (*Id.*).

IV. **Legal Analysis**

Plaintiff has raised four arguments challenging the ALJ's non-disability determination.[2] First, she has argued that the ALJ erred in her evaluation of evidence relevant to Listing 12.05B for Intellectual Disorder. Second, she has challenged the ALJ's evaluation of medical opinions offered by her treating psychiatrist. Third, Plaintiff has argued that the ALJ erred in relying on the State agency psychologists' opinions (hereinafter "prior administrative medical findings") in her assessment of Plaintiff's impairments, symptoms, and resultant limitations. And fourth, Plaintiff has argued that the ALJ failed to include all appropriate limitations in the RFC; specifically, that the ALJ failed to include a limitation to account for her use of a therapy dog. Though the ALJ's treatment of the evidence in this matter was thorough in many respects, the Court will order remand due to the ALJ's failure to discuss all evidence relevant to her evaluation of the Intellectual Disorder listing and her further failure to adequately explain her consideration of Plaintiff's alleged reliance on a therapy dog.

---

[2] Seven issues are outlined in her brief (Doc. No. 13, pg. 3), but they are reducible to four.

The Court first addresses the ALJ's error in her evaluation of evidence relevant to whether Plaintiff met or equaled criteria for Listing 12.05 at step three. Articulating her step-three findings, the ALJ explained that "[a]lthough [Plaintiff] testified that she received special education classes, the information received from the claimant's high school could not confirm whether special education classes were provided." (R. 21 (citing Ex. 15E)). Plaintiff has argued that the ALJ's consideration of evidence in this regard is incomplete because she failed to mention evidence that suggested Plaintiff received special education services. The Court agrees.

It is axiomatic that an ALJ's findings are not supported by substantial evidence if he or she rejects evidence "for no reason or for the wrong reason." *Cotter v. Harris*, 642 F.2d 700, 706—07 (3d Cir. 1981). If there is competing evidence in a claimant's record, the ALJ may not choose a winner without "giv[ing] some reason for discounting the evidence she rejects." *Plummer*, 186 F.3d at 429. Here, the ALJ appears to have overlooked or rejected evidence tending to show Plaintiff was a beneficiary of special education services without explanation.

As indicated above, the ALJ premised her step-three finding, in part, upon evidence that Plaintiff's high school could not confirm that she was provided with special education classes. (R. 21). The ALJ's observation in this regard is not baseless: it is supported by a letter indicating that Plaintiff's high school records do not show she received special education classes. (R. 272). However, also in evidence is a letter from the Director of Special Education & Pupil Services at Allegany County Public Schools in Maryland wherein the Director conveyed that Plaintiff "was a student who received Special Education Services during the time [she] attended Allegany County Public Schools" and that those "services ended on May 28, 2003." (R. 273). She went on to explain that Plaintiff's records had been destroyed in compliance with applicable record retention standards. (*Id.*). Because the ALJ failed to explain her consideration of this evidence,

which appeared to show Plaintiff received special education services, the Court will order remand.

Remand is also appropriate for additional consideration of evidence related to the necessity of a therapy dog limitation in Plaintiff's RFC. ALJs must formulate an RFC that accurately reflects a claimant's maximum sustained work ability. 20 C.F.R. § 404.1545(a)(1). Accordingly, any limitation that is credibly established by evidence in the record must be included in the RFC. *See Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 147 (3d Cir. 2007). In this matter, no provision was made in Plaintiff's RFC for use of a service animal. The absence of such a limitation is not altogether unsurprising as there is relatively little evidence in Plaintiff's record to establish it. Here, as in *Pfleger v. Commissioner of Social Security*, there was a lack of evidence showing Plaintiff's dog was "a professionally trained service animal." No. CV 20-10757, 2022 WL 577967, at *7 (D.N.J. Feb. 25, 2022).[3]

Critically, however, the ALJ in this matter did not explain why she left a service-animal limitation out of the RFC as the ALJ did in *Pfleger*. To the contrary, the ALJ appeared to acknowledge that Plaintiff benefited from her "service dog" (R. 24) but then failed to address the appropriateness of a corresponding limitation for purposes of the RFC. Where, as here, it might seem most expedient for the Court to simply decide whether a service-animal limitation was established by the evidence, the Court is cautious to avoid supplying "its own independent analysis" of the evidence to correct "the ALJ's failure to consider all of the relevant and

---

[3] Plaintiff indicated at her hearing that she intended to train her dog to be an emotional support animal but that she had not yet done so. (R. 54). Treatment records from March and April 2020 indicate Plaintiff was given the forms necessary to release her psychiatric records to the appropriate authority for requesting a "psychiatric service dog." (R. 361). Plaintiff's treatment records further show that she bought or adopted a puppy and, while this was a pleasant distraction that lessened certain psychiatric symptoms, the puppy had not yet been trained to provide psychiatric support. (R. 348).

probative evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). Remanding for further administrative proceedings is the better course because it will allow for an agency determination of the necessity of a service-animal limitation in Plaintiff's RFC. For this and the foregoing reason, the Court will grant, in part, Plaintiff's motion and remand her claim.[4]

---

[4] Plaintiff has also argued that the ALJ erred in finding Plaintiff's treating psychiatrist's opinions to be unpersuasive and in finding the State agency psychologists' opinions to be persuasive. As explained herein, these arguments are not compelling and have not contributed to remand of this matter. However, the Court's order remanding this matter for further proceedings is broad enough to permit further review of the medical opinion evidence if necessary.

Because Plaintiff's DIB application was filed on or after March 27, 2017, medical opinions and prior administrative medical findings in her record were subject to evaluation pursuant to 20 C.F.R. § 404.1520c. Section 404.1520c directs ALJs to evaluate the persuasiveness of opinions and findings by reference to five factors and dictates that ALJs must explain their consideration of the two most important factors: supportability and consistency. *Id.* §§ 404.1520c(b)(2), (c)(1)—(5). Under this standard, Plaintiff's initial medical-opinions argument—that the ALJ ought to have afforded her treating psychiatrist's opinions controlling weight—falls flat. Her appeal in this regard is to the now outdated "treating physician rule." *Fargnoli*, 247 F.3d at 43 (explaining that a treating physician's opinion was only entitled to controlling weight under the previously applicable regulations when it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with the other substantial evidence in the record"). According to the rules applicable to Plaintiff's claim, a medical source's relationship with the claimant is relevant, but need not be specifically mentioned in an ALJ's assessment of an opinion's persuasiveness. 20 C.F.R. § 404.1520c(c)(3). Therefore, the ALJ did not err in this matter by not discussing the nature of Plaintiff's relationship with her treating psychiatrist.

The Court is likewise unpersuaded by Plaintiff's more general argument that the ALJ ought to have found the opinions offered by Plaintiff's treating psychiatrist to be more persuasive. Plaintiff's treating psychiatrist opined that Plaintiff would have marked and extreme limitations in four areas of mental functioning and that she would require more than three absences monthly. (R. 481—82). The ALJ adequately explained why she found these opinions to be unpersuasive: because the source failed to support her opinions with accompanying explanations and because the opinions were not consistent with other evidence, including the source's own clinical findings. (R. 22). This analysis shows that the ALJ evaluated the medical opinion evidence and specifically addressed supportability and consistency, as she was required to do under the applicable regulations. The Court detects no error.

The Court also rejects Plaintiff's argument that the ALJ erred in her evaluation of the State agency psychologists' opinions by finding their opinions to be more persuasive than those offered by Therapist Mallory Hendricks, Dr. Andrea Favini (treating psychiatrist), and Dr.

7

**V.    Conclusion**

For the foregoing reasons the Court will order remand of this matter for further administrative proceedings. There is no reason for the Court to go so far as to reverse the underlying decision and direct the payment of benefits upon remand. Such a remedy is rarely appropriate and will only be awarded "when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits." *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 366 n.16 (E.D. Pa. 2018) (citing *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir. 1986)). As the Court has indicated

---

Lindsey Groves combined. (R. 22). Plaintiff has argued that the ALJ erred in this regard because the State agency psychologists lacked relevant evidence, like Dr. Groves's IQ testing, when they reviewed her record. However, State agency reviewers' findings are inherently valuable even though it is widely acknowledged that there will be "some time lapse between [their] report and the ALJ hearing and decision" *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011), during which time additional evidence will be added to a claimant's record. Accordingly, the Court will not fault the ALJ for finding the State agency psychologists' findings persuasive merely because additional evidence was added to the record after they rendered their findings.

The Court is similarly unpersuaded by Plaintiff's argument that the ALJ's persuasiveness findings for the State agency psychologists' findings was erroneous because their findings were inconsistent with other evidence. As the ALJ explained, their findings were generally consistent with records from Plaintiff's therapist, Lauren Schlegel. (R. 25). To the extent the State agency psychologists' findings were inconsistent with other opinion evidence, the Court has already explained that the ALJ did not err in finding such other evidence to be unpersuasive. Finally, the Court does not agree with Plaintiff's argument that the ALJ relied too much on her daily activities to find the State agency psychologists' opinions to be persuasive and her treating psychiatrist's opinions to be unpersuasive. Daily activities are relevant to an ALJ's assessment of a claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c)(3)(i). Contrary to Plaintiff's assertion, the ALJ in this matter did not over rely on "miniscule" activities. *Smith v. Califano*, 637 F.2d 968, 971–72 (3d Cir. 1981) ("It is well established that sporadic or transitory activity does not disprove disability."). The ALJ explained in her consideration of the medical opinion and prior administrative medical findings that there was evidence that Plaintiff "leaves her house to shop" and "goes fishing." (R. 22). Later in the decision, the ALJ noted that Plaintiff "goes shopping and fishing," "utilizes public transportation," and "attends to her personal care needs." (R. 24). The ALJ did not err in considering these activities and the Court finds no overreliance on this evidence in the ALJ's decision.

8

throughout its order, the reason for remand in this matter is not that the evidence definitively proves the ALJ should have arrived at a different outcome; rather, the reason for remand in this matter is that the ALJ failed to show her consideration of all the relevant evidence. Accordingly, the Court hereby remands this matter for proceedings consistent with the Order.

s/ Alan N. Bloch
United States District Judge

ecf:    Counsel of Record